UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 12498 JLT Civil Action No.:

|  |  |
|---|---|
| WAY SYSTEMS, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| FRACTAL COMMERCE, INC., | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

MAGISTRATE JUDGE _____

**COMPLAINT AND JURY DEMAND**

RECEIPT # _____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE_____

**BACKGROUND**

1.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 in

which the plaintiff, WAY Systems, Inc. ("WAY"), seeks the Court's determination that it has

not materially breached the terms of a License Agreement with the defendant, Fractal

Commerce, Inc., ("Fractal"), and that WAY is the rightful inventor and owner of technologies

identified in seven United States patent applications which WAY has filed and any patents that

issue from those applications.  Fractal has engaged in oppressive and coercive conduct,

repeatedly threatening to put WAY out of business unless WAY agrees to execute a

burdensome and highly detrimental amendment to the existing License Agreement between the

parties, and has given a deadline of Monday, November 29, 2004, for such action.  WAY also

seeks to recover damages caused by Fractal's breach of the covenant of good faith and fair

dealing and its violations of M.G.L. c. 93A.

## PARTIES

2.     Plaintiff WAY is a Delaware corporation with a principal place of business at 200 Unicorn Park, Woburn, Massachusetts.

3.     Defendant Fractal is a Delaware corporation with a principal place of business at 1931 Crescent Park Drive, Reston, Virginia.

## JURISDICTION AND VENUE

4.     This Court's jurisdiction is established pursuant to 28 U.S.C. § 1338(a), as a controversy exists as to inventorship of technologies identified in WAY's pending patent applications, thereby implicating 35 U.S.C. §§ 116 and 256.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).

## BACKGROUND FACTS

6.     WAY is a developer, manufacturer, and seller of mobile transaction terminal (MTT) solutions. MTTs allow merchants to process payment card transactions anywhere using a low cost, convenient, mobile phone-based point of sale (POS) system that includes the terminal, portable printer and a backend system that provides live authorization to banks and processors. MTTs are a highly convenient and cost effective alternative to traditional point of sale equipment.

7.     Fractal is in the business of commercializing and licensing technologies for mobile commerce and electronic payment systems as defined in certain patents under which Fractal hold rights. Among those technologies is an intelligent switching apparatus known to the parties as V-SIM Core Technology.

8.     Fractal was granted exclusive rights in at least certain of these technologies by an agreement with an entity called Aussie L.L.C. PTY Ltd. (the "Fractal/Aussie Agreement"). A copy of the Fractal/Aussie Agreement is attached as Exhibit 1.

9.     On February 20, 2002, Fractal and WAY entered into a license agreement ("Prior License Agreement") whereby WAY was assigned non-exclusive worldwide rights to use the technologies which the Fractal/Aussie Agreement had assigned to Fractal. A copy of the Prior License Agreement is attached as Exhibit 2.

10.     On October 24, 2003, WAY and Fractal entered into a license agreement ("License Agreement") in which, among other things, Fractal licensed to WAY the exclusive rights to develop, manufacture, and market merchant point of sale ("MPOS") devices using the V-SIM Core Technology. A copy of the License Agreement is attached as Exhibit 3.

11.     Since February 2002, WAY has been engaged in a comprehensive research and development program for the design, manufacture, marketing, and sale of MTT solutions which include hardware, firmware and server technology that are currently used with Fractal's V-SIM Core Technology. WAY has focused much of its attention in this regard on MPOS devices used by merchants to accept consumer payment cards.

12.     WAY's efforts have resulted in the invention and development of new technologies toward the advancement of MPOS devices and payment systems, and it has applied to the United States Patent and Trademark Office for patents on seven of its inventions. Copies of each of its seven applications is attached in Exhibit 4.

13.     Article 2 of License Agreement grants to Fractal, inter alia, a non-exclusive license to unlimited copies of WAY's Back-End Server Software for the support of a certain number of MPOS devices and other personal point of sale devices defined as "PPOS," as well

as other consideration, and Article 3 requires that WAY give additional valuable consideration to Fractal in the form of, among other things, preferred stock warrants, one-time license fee payments totaling $400,000, and royalty payments.

14.    Pursuant to Article 8.1, the term of the License Agreement "is a perpetual Term (except as to [Fractal's] Patents, at [sic] to which the license hereunder shall be limited to the life of such Patents and jurisdictions which so require), unless terminated pursuant to this Article." Under Article 8.2, either party may terminate the License Agreement only where the other has committed a material breach and either (i) "the breach is incurable," or (ii) the breaching party "fails to cure such breach within sixty (60) days of receiving Notice of default from [the non-breaching party]."

15.    On June 30, 2004, WAY and Fractal executed an Amendment and Waiver to the License Agreement ("June 2004 Amendment"). A copy of the June 2004 Amendment is attached as Exhibit 5. The June 2004 Amendment provided WAY an extension of time to make certain payments under the License Agreement in exchange for providing Fractal with the source code and other information for the "MTT 1500" device developed by WAY.

16.    By letter dated September 8, 2004, Fractal's Vice President of Projects and Operations, David Christie, alleged that WAY had not complied with "several terms and conditions" of the License Agreement and the June 2004 Amendment. A copy of the September 8, 2004, letter is attached as Exhibit 6. Christie further alleged that WAY's purported non-compliance included "some . . . material breaches" under the License Agreement and therefore that they "all must be addressed and amended within 60 days . . . ." Christie did not indicate which of the alleged non-compliance items were deemed by Fractal to be material breaches.

17.     By letter dated October 20, 2004, Will Graylin, WAY's CEO and President

("Graylin") fully responded to each of the points raised in Christie's letter and demonstrated

that WAY was not in material breach of the License Agreement in any way. A copy of the

October 20, 2004, letter is attached as Exhibit 7.

18.     In the weeks following Graylin's letter of October 20, 2004, several discussions

occurred between Graylin and Fractal's President, Keith Benson ("Benson"), addressing

Fractal's unsupported allegations of material breaches of the License Agreement. A primary

concern expressed by Benson was WAY's alleged failure to obtain Non-Disclosure Agreements

("NDAs") as required under the License Agreement. Graylin demonstrated to Benson that

WAY had materially complied with its obligations regarding confidentiality, including

obtaining NDAs under Articles 2.3, 7.2 and 7.4 of the License Agreement.

19.     On November 11, 2004, Graylin met with Benson at WAY's office in Woburn,

Massachusetts. Benson told Graylin that there would be no more negotiations about the issues

involving the License Agreement. Instead, Benson stated that he would send to Graylin a

proposed second amendment to the License Agreement (the "Proposed Second Amendment")

and that, if WAY did not execute the Proposed Second Amendment, Fractal would terminate

the License Agreement and file legal action against WAY in Virginia's so-called "rocket

docket" court to put WAY out of business. Finally, Benson threatened that he, personally,

would come to Massachusetts and lock the doors to WAY's office.

20.     Benson sent the Proposed Second Amendment to Graylin on November 19,

2004. A copy of the Proposed Second Amendment is attached as Exhibit 8. The Proposed

Second Amendment represents significant and material changes in numerous fundamental

terms of the License Agreement, all in favor of Fractal and to the great detriment of WAY, including, but not limited to, the following:

(a)    A requirement that WAY would grant to Fractal all intellectual property rights in WAY's patent applications and any other WAY patent application technologies that rely on or refer to Fractal's technology, intellectual property, confidential information, or know how.

(b)    A requirement, in essence, that WAY abrogate the control over product design that was granted to it in the License Agreement.

21.    In addition, Benson has made the assertion that at least one of the WAY patent applications is directed to Fractal invention(s) communicated by Fractal employees to WAY and, then, taken by WAY as its own.

22.    Further, Benson has asserted that Fractal owns all rights in and to WAY's patent applications.

23.    In spite of WAY's continued efforts to communicate with Fractal in a reasonable manner to resolve the parties' disputes, Benson has remained adamant that, if the Proposed Second Amendment is not executed by WAY, he would take steps necessary to terminate the License Agreement and put WAY out of business.

24.    At all relevant times, Fractal knew and understood that WAY's business plan and future success rely on the License Agreement, including WAY's rights to use Fractal's V-SIM Core Technology. Since February 2002, WAY has spent in excess of approximately $8.5 million to develop its business.

25.    Late in the afternoon on Wednesday, November 24, 2004, Benson called Graylin and again threatened him, stating that if Graylin did not agree by the end of the day to

execute the Proposed Second Amendment, Fractal would send an immediate Notice of Termination and would then proceed to a Virginia court on Friday, November 26, 2004, to file a complaint in that jurisdiction's "rocket docket" where he would seek injunctive relief. Benson again threatened that he would personally fly to Boston to shut WAY down. Later in the conversation he extended the "deadline" for his take-it-or leave-it proposition to Monday, November 29, 2004, at noon.

26.    At all times, WAY has materially performed its obligations under the License Agreement and has satisfied all conditions precedent.

27.    It is clear that Benson and Fractal's real goal is not to negotiate an amendment to the License Agreement designed, as characterized by Benson, to clarify the agreement, but rather to hold an economic "gun" to WAY, including the threat of the court action designed to shut down WAY's business, in order to force WAY to execute an amendment that is highly detrimental to WAY's interests, but which would substantially further the interests of Fractal.

## COUNT I
### Declaratory Judgment
(Non-breach of License Agreement)

28.    WAY realleges and incorporates the allegations in paragraphs 1 through 27, above, as if fully set forth herein.

29.    The October 24, 2003 License Agreement is a contract between the parties.

30.    Under terms of the License Agreement, neither party is entitled to terminate the Agreement absent a material breach by the other party.

31.    Fractal has repeatedly alleged, without just basis, that WAY materially breached the License Agreement. Fractal has made its repeated allegations in spite of WAY's demonstration that no such breaches have occurred.

32.     Fractal has threatened to terminate the License Agreement and commence legal action based on its unsupported allegations of material breaches.

33.     An actual controversy exists as to whether WAY materially breached the License Agreement and, therefore, whether Fractal is entitled to terminate the License Agreement.

34.     This dispute has caused, and will continue to cause, substantial loss to WAY. A declaratory judgment is appropriate because it will serve a useful purpose in clarifying and settling the dispute, and it will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

## COUNT II
### Declaratory Judgment
(Inventor of the Technology Described by
the WAY Patent Applications - 35 U.S.C. §§ 116 and 256)

35.     WAY realleges and incorporates the allegations in paragraphs 1 through 34, above, as if fully set forth herein.

36.     WAY has applied to the United States Patent and Trademark Office for federally registered patents on seven of its inventions.

37.     As recently as November 11, 2004, Fractal has asserted that it is the inventor of the technology identified in one or more of the WAY patent applications.

38.     An actual controversy exists as to the true and rightful inventor of the technology identified in the WAY patent applications.

39.     This dispute has caused, and will continue to cause, substantial loss to WAY. A declaratory judgment is appropriate because it will serve a useful purpose in clarifying and

settling the dispute, and it will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

## COUNT III
### Declaratory Judgment
(Ownership of Technologies Described by the WAY Patent Applications)

40.     WAY realleges and incorporates the allegations in paragraphs 1 through 39, above, as if fully set forth herein.

41.     WAY has applied to the United States Patent and Trademark Office for federal registration of  patents on seven of its inventions.

42.     Fractal has repeatedly asserted that it is the rightful owner of the technologies identified in WAY's patent applications, an assertion thay WAY vehemently denies.

43.     An actual controversy exists as to the true and rightful owner of the technology identified in the WAY patent applications.

44.     This dispute has caused, and will continue to cause, substantial loss to WAY.  A declaratory judgment is appropriate because it will serve a useful purpose in clarifying and settling the dispute, and it will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

## COUNT IV
### Declaratory Judgment
(Coercion)

45.     WAY realleges and incorporates the allegations in paragraphs 1 through 44, above, as if fully set forth herein.

46.     Fractal knows and understand that the success of WAY's business depends on Fractal's good faith continuation of the License Agreement.

47.     Fractal has unfairly and unlawfully leveraged its contractual advantage by threatening, without just basis, to terminate the License Agreement and commence litigation unless WAY executes the Proposed Second Amendment.

48.     The Proposed Second Amendment represents significant and material changes in numerous fundamental terms of the License Agreement, all in favor of Fractal and to the great detriment of WAY.

49.     Fractal has offered no valuable consideration in exchange for WAY's execution of the Proposed Second Amendment.

50.     WAY has refused to execute the Proposed Second Amendment.

51.     An actual controversy exists as to whether Fractal's threats constitute unlawful coercion that would render ineffective Fractal's threatened termination of the License Agreement, if it were carried out, and invalidate the Proposed Second Amendment, if it were executed.

52.     This dispute has caused, and will continue to cause, substantial loss to WAY. A declaratory judgment is appropriate because it will serve a useful purpose in clarifying and settling the dispute, and it will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

## COUNT V
### Breach of the Implied Covenant of Good Faith And Fair Dealing

53.     WAY realleges and incorporates the allegations in paragraphs 1 through 52, above, as if fully set forth herein.

54.     The October 24, 2003 License Agreement is a contract between the parties.

55.     The License Agreement contains the implied covenant of good faith and fair dealing.

56.     Fractal's conduct described herein, including, among other things, its threat to terminate the License Agreement, and its coercive attempts described above to require the execution of an amendment to the License Agreement are arbitrary and unreasonable acts that have the effect of preventing WAY from receiving the bargained-for benefits of the License Agreement, all in breach of the implied covenant of good faith and fair dealing.

57.     As a direct result of Fractal's conduct, WAY has suffered substantial damages in an amount to be determined at trial.

## COUNT VI
## Violation of M.G.L. c. 93A

58.     WAY realleges and incorporates the allegations in paragraphs 1 through 57, above, as if fully set forth herein.

59.     WAY and Fractal are each engaged in trade or commerce within the meaning of M.G.L. c. 93A.

60.     Fractal has engaged in unfair and deceptive acts, including, but not limited to, commercial extortion, whereby it has threatened to terminate the License Agreement, commence litigation, and otherwise to destroy WAY's business unless WAY executes the Proposed Second Amendment, which contains new and material terms all in favor of Fractal and to the great detriment of WAY.

61.     Fractal has committed its unfair and deceptive acts or practices knowingly and willfully.  Fractal knows that WAY's business relies on Fractal's good faith continuation of the License Agreement.  In spite of this knowledge, Fractal has employed coercive and oppressive

tactics involving bad faith threats of termination of the License Agreement and litigation as a means of taking wrongful advantage of WAY's vulnerable position and forcing WAY, without consideration, to enter into the Proposed Second Amendment.

62. Fractal's acts occurred primarily and substantially in the Commonwealth of Massachusetts.

63. Fractal's conduct has caused WAY to suffer substantial damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, WAY respectfully requests that the Court:

1. Enter judgment as to Count I and declare that WAY has not materially breached the License Agreement and that Fractal is not presently entitled to terminate the License Agreement;

2. Enter judgment as to Count II and declare that WAY is the true and rightful inventor of the technologies identified in its seven patent applications pursuant to 35 U.S.C. §§ 116 and/or 256;

3. Enter judgment as to Count III and declare that WAY is the true and rightful owner of the technologies identified in its seven patent applications;

4. Enter judgment as to Count IV and declare that Fractal has engaged in oppressive and coercive tactics in attempting to force WAY to execute the Second Proposed Amendment, that Fractal's threatened termination, if carried out, would be ineffective, and the Proposed Second Amendment, if executed, would be invalid;

5.      Enter judgment as to Count V and award WAY its damages in an amount to be determined at trial together with interest and costs;

6.      Enter judgment as to Count VI and declare that the defendant has willfully and intentionally engaged in one or more deceptive acts or practices in violation of M.G.L. c. 93A and award WAY damages in an amount to be determined at trial, trebled, together with interest, costs, and attorneys' fees; and

7.      Order such other relief as the Court deems just and reasonable.

## JURY DEMAND

WAY DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

WAY SYSTEMS, INC.
By its attorneys,

Joseph S. Ayoub, Jr., Esq. (BBO #024900)
Thomas W. Aylesworth, Esq. (BBO #630994)
Tracy R. Schubert (BBO # 647454)
Nutter McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2604
(617) 439-2000

Date:  November 29, 2004

1382247.6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)  Way Systems, Inc. v. Fractal Commerce, Inc.

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL

    COVER SHEET.   (SEE LOCAL RULE 40.1(A)(1)).

    ___    I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    _X_    II.     195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
                   740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

    ___    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                   315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                   380, 385, 450, 891.

    ___    IV.     220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                   690, 810, 861-865, 870, 871, 875, 900.

    ___    V.      150, 152, 153.

    **04  12498  JLT**

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
    HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
    COURT?

                                                        YES            (NO)

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
    PUBLIC INTEREST?   (SEE 28 USC §2403)

                                                        YES            (NO)
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                        YES             NO

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
    28 USC §2284?

                                                        YES            (NO)

7.  DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
    COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
    SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                                       (YES)           NO

    A.      IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

            (EASTERN DIVISION)              CENTRAL DIVISION              WESTERN DIVISION

    B.      IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
            GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

            EASTERN DIVISION               CENTRAL DIVISION              WESTERN DIVISION

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   Joseph S. Ayoub, Jr.; Nutter McClennen & Fish LLP

ADDRESS   World Trade Center West, 155 Seaport Blvd., Boston, MA 02210-2604

TELEPHONE NO.   617-439-2000

(Cover sheet local.wpd  - 11/27/00)

"₄JS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Way Systems, Inc.

**DEFENDANTS**

Fractal Commerce, Inc.

**(b)** County of Residence of First Listed Plaintiff  **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joseph S. Ayoub, Jr.; Thomas Aylesworth; Tracy R. Schubert
Nutter McClennen & Fish, LLP, World Trade Center West,
155 Seaport Blvd., Boston, MA 02210-2604; 617-439-2000

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 630 Liquor Laws | | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | | | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 640 R.R. & Truck | | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine | [ ] 650 Airline Regs. | [ ] 820 Copyrights | |
| | [ ] 345 Marine Product Liability | [ ] 660 Occupational Safety/Health | [X] 830 Patent | [ ] 810 Selective Service |
| | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 850 Securities/Commodities/Exchange |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | **LABOR** | |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 892 Economic Stabilization Act |
| | | | | [ ] 893 Environmental Matters |
| | | | **SOCIAL SECURITY** | [ ] 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 720 Labor/Mgmt. Relations | |
| | | | [ ] 861 HIA (1395ff) | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 862 Black Lung (923) | |
| [ ] 220 Foreclosure | [ ] 442 Employment | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 900 Appeal of Fee Determination |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | Habeas Corpus: | [ ] 864 SSID Title XVI | Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 530 General | [ ] 865 RSI (405(g)) | |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 535 Death Penalty | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | | [ ] 540 Mandamus & Other | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 890 Other Statutory Actions |
| | | [ ] 550 Civil Rights | **FEDERAL TAX SUITS** | |
| | | [ ] 555 Prison Condition | [ ] 740 Railway Labor Act | |
| | | | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| | | | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS—Third Party 26 USC 7609 |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

35 U.S.C. Sections 116 and 256.  Dispute as to true and rightful inventor of technology identified in Patent Applications.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND:  [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  11/29/04

SIGNATURE OF ATTORNEY OF RECORD   Joseph S. Ayoub, Jr.

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____